34340. BURNS *et al.* v. RALSTON PURINA COMPANY.

Decided March 14, 1953—Rehearing denied March 30, 1953.

878

884

*Wheeler, Robinson & Thurmond,* for plaintiffs in error.

*Kenyon, Kenyon & Gunter,* contra.

FELTON, J. ■ Before entering into a discussion of the contentions of the plaintiffs in error, the following facts should be restated. Two lots of turkey poults were received at the Garrison farm, not on the same day, but a day or two apart. They were respectively hatched in Virginia the day before they arrived by express for delivery to Garrison. All of the first batch were put in the large building. Of the second batch some went in the large building and some in the small, there being about 4000 in the large building and about 2000 in the small building. For a period of about eleven days to April 1, 1949, all were fed exclusively with Arcadia feed. Within that period there were deaths as follows: In the large building, 695. In the small building, 69. There was testimony that normally the death rate is about 10 percent. On this basis the deaths should have been about 400 in the large building, but there was testimony that 695 could not be considered excessive, that is, was "not bad." In the small building the loss was less than 10 percent. Feed being low, Garrison, on April 1, 1949, ordered an additional supply and received two bags of Arcadia and five bags of Purina feed. At the time of its arrival late in the afternoon, all turkeys were in excellent condition insofar as they appeared, being lively and flying around. Two bags of Purina were placed in the large building and three bags in the small building. It does not precisely appear how much Arcadia went into each, but, with the exception hereinafter noted, all the troughs were filled with some of each. Garrison testified that he mixed the feed because it was prudent and safer to feed them a new feed, such as Purina, in a mixture with Arcadia which they had been eating, rather than to feed them a distinct new feed of itself. After this addition and consumption of feed, the deaths sharply increased. In the early morning of April 2, 1949, Garrison was aroused from his sleep and summoned to the buildings, where he found the poults in a paralyzed and sickened condition, many already dead and others

dying. Some of the dead were opened and it was found that their interiors were black and the craws so colored as to indicate that they had been poisoned from the feed, and it was testified by a witness that moldy feed would produce such a condition and kill poults. There was, however, no direct positive evidence as to which brand of feed caused the poisoning here. On April 2, 3, and 4, 1949, there was a total of 679 deaths in the concrete or large building, and a total of 999 through April 10th. In the small or wooden building, with the least number of poults, and where most of the Purina feed went, there was, for the same three days, a total of 1290 deaths, and 1431 through April 10th.

It is contended by the plaintiffs in error that, because of the above-mentioned disparity in deaths, a jury question was presented as to whether or not Purina feed caused the poisoning and death, and that the direction of a verdict for the defendant was error. The burden was upon the plaintiffs to establish the cause of death; and, while the stated facts may create a suspicion, they do not authorize an inference that the Purina feed was responsible for the deaths of the turkeys, there being no evidence that the Arcadia feed was in good condition when received at the Garrison farm and put in the troughs with Purina. The plaintiffs in error contend that a verdict in their favor was authorized because the evidence shows that, if the three upper pens where no Purina feed was placed showed only a normal death rate, it necessarily follows that the Purina feed caused the deaths where the death rate was high, since both Arcadia and Purina feed was put in the pens where the death rate was high. This contention is tenable on one hypothesis only, and that is that some of the Arcadia feed which came in with the Purina on April 1, 1949, went into the three pens with the normal death rate. The evidence is too uncertain and indefinite to authorize such a finding. The consequence is that the evidence shows only that the Arcadia used in the three upper pens was some which was already on hand on April 1, 1949, and was not some of the new Arcadia brought in on that day. This leaves the situation where both feeds delivered on April 1, 1949, were put in all pens but the upper three, and where there is no evidence of the good condition of all of the Arcadia. While J. L. Fulenwider testified that he examined some of the Arcadia feed that came from Cumming, Georgia, we do

not think the finding would have been authorized that he examined all of both sacks of Arcadia feed which was bought the same day on which the Purina feed was bought and found it in apparently good condition. Mr. Garrison's explanation as to why there was no Purina in the three upper pens would have to hold as to why none of the April 1, 1949, Arcadia went into them. He testified that there was some Arcadia on hand near the three upper pens, and it was too far to carry additional feed to that point.

Whether the deaths of the turkeys resulted from the eating of Arcadia feed, Purina feed, or both, could only be arrived at by conjecture or speculation. Since the burden of proof was upon the plaintiffs to show that the deaths resulted from the use of Purina feed, and the hypothesis that the deaths could have resulted from the Arcadia feed bought at the same time as the Purina was not excluded, the court did not err in directing a verdict for the defendant and in overruling the motion for a new trial.

■ There is no merit in the contention that a nonsuit should have been ordered instead of the direction of a verdict. Evidence was introduced by the defendant; and, since the record shows that all evidence was in at the time of the directed verdict, it will be presumed that the defendant had closed its case. It would seem that, if a defendant closes its case, whether it introduced evidence or not, and subjected itself to a verdict, it would be entitled to a directed verdict and an end of the case, if the evidence demanded it.

The court did not err in overruling the motion for a new trial.

The former judgment of reversal is on rehearing vacated, and the judgment overruling the motion for new trial is affirmed and the foregoing opinion is substituted for the original opinion.

*Judgment affirmed. Townsend and Worrill, JJ., concur. Sutton, C.J., disqualified.*